# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR EDWIN CARBALLO,<br><br>    Petitioner,<br><br>    v.<br><br>FERETI SEMAIA, Facility Administrator, Adelanto ICE Processing Center; ERNESTO SANTACRUZ, JR., in his official capacity, Los Angeles Field Office Director, U.S. Immigration and Customs Enforcement; KRISTI NOEM, in her official capacity, Secretary of the U.S. Department of Homeland Security; PAMELA BONDI, in her official capacity, Attorney General of the United States,<br><br>    Respondents. | Case No. 5:25-cv-03176-SPG-AJR<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION [ECF NO. 17]** |

Before the Court is the Motion for Preliminary Injunction, (ECF No. 17 ("Motion")), filed by Petitioner Cesar Edwin Carballo ("Petitioner"). The Court finds the matter suitable for resolution without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS the Motion.

## I.  BACKGROUND

On December 3, 2025, after review of the parties' briefing, the Court granted Petitioner's Ex Parte Application for Temporary Restraining Order as to Unlawful Detention. (ECF No. 13 ("TRO Order")) (granting (ECF No. 2 ("TRO App.")). The Court ordered Respondents Fereti Semaia, Facility Administrator at Adelanto ICE Processing Center; Ernesto Santacruz, Jr., Los Angeles Field Office Director of U.S. Immigration and Customs Enforcement Office ("ICE"); Kristi Noem, Secretary of the U.S. Department of Homeland Security ("DHS"); and Pamela Bondi, Attorney General of the United States, acting in their official capacities (collectively, "Respondents"), to provide Petitioner with a bond hearing before a neutral decisionmaker during which the government would have the burden to demonstrate that Petitioner's continued detention was justified by a material change in the circumstances that existed since Petitioner was originally released on bond on September 25, 2025. (*Id.*).

On December 11, 2025, Petitioner was provided a bond hearing before an Immigration Judge ("IJ"). (ECF No. 24-1 ("Gonzalez Decl.") ¶¶ 1, 2); *see also* (ECF No. 23-1 ("Custody Redetermination Bond Order")). On December 17, 2025, after posting a $15,000 bond, Petitioner was released from immigration custody. (Gonzalez Decl. ¶¶ 1, 2). Petitioner now seeks a preliminary injunction, enjoining Respondents from re-detaining him pending further order of this Court. (Mot. at 29–30).

### A.  Factual Background

The Court previously summarized in its TRO Order the facts alleged in the Petition for Writ of Habeas Corpus, (ECF No. 1 ("Petition")), and incorporates that summary by reference in this order.[1]  *See* (TRO Order).  In brief, Petitioner is a noncitizen who, following his conviction of second-degree burglary and receipt of stolen property, was ordered deported to El Salvador in 1994. (ECF No. 1-2 ("Shugall Decl.") ¶ 4). Between

---

[1] The Motion also incorporates by reference the facts alleged in the Petition, (Mot. at 6), and the government does not oppose the Court's description of Petitioner's alleged facts, *see* (ECF No. 23 ("Opp.")).

1994 and 2001, Petitioner was deported to El Salvador, re-entered the United States, deported to Mexico, and again re-entered the United States. (*Id.* ¶¶ 4–7). He has remained in the United States continuously since 2001. (*Id.* ¶¶ 5–6).

On March 25, 2025, ICE arrested and detained Petitioner and reinstated his 1994 deportation order pursuant to 8 U.S.C. § 1231(a)(5). (*Id.* ¶ 7). On July 13, 2025, Petitioner filed a Form I-589 in support of his application for withholding of removal and protection under the Convention Against Torture ("CAT"), asserting that he feared prosecution and/or torture if he were returned to El Salvador. (*Id.*). On September 23, 2025, after six months in detention, Petitioner requested and was provided a bond hearing, during which an IJ found that he was not a flight risk and did not pose a danger to the community. (*Id.* ¶ 9). He was therefore ordered released from immigration custody contingent on the posting of a bond and compliance with an Order of Supervision ("OSUP"). (*Id.* ¶¶ 9, 11, 12). ICE did not appeal Petitioner's release on bond. (*Id.* ¶ 10). Petitioner represents, and Respondents do not contest, that after he was released on bond, Petitioner complied with all the conditions of his release before he was re-detained on November 3, 2025. (*Id.* ¶ 12).

Meanwhile, on October 31, 2025, an IJ denied Petitioner's CAT application. (*Id.* ¶ 15). On November 3, 2025, Petitioner appealed this denial to the Bureau of Immigration Affairs ("BIA"), where it is currently pending, and also filed an appeal before the Ninth Circuit to preserve his appellate rights in case he receives an adverse determination from the BIA. (*Id.* ¶¶ 8, 17). On November 3, 2025, however, Petitioner's Intensive Supervision Appearance Program ("ISAP") officer instructed Petitioner to report to the ICE Office and, after Petitioner did so, Petitioner was re-detained. (*Id.* ¶¶ 16, 17).

**B.    Procedural History**

On November 25, 2025, Petitioner filed a Petition for Writ of Habeas Corpus and Application for Temporary Restraining Order, seeking immediate release or a bond hearing before a neutral administrator and a prospective injunction preventing his re-detention without a pre-deprivation hearing. (Pet.); (TRO App.). Petitioner raised three claims for relief in the Petition: (1) that his detention outside of the 90-day removal period violated

8 U.S.C. §§ 1231(a)(3) and 1231(a)(6), (Pet. ¶¶ 100–06); (2) that his detention was arbitrary, unjustified, and punitive such that it was a substantive due process violation under the Fifth Amendment, (Pet. ¶¶ 107–12); and (3) that his re-detention without a pre-deprivation hearing before a neutral arbiter, during which ICE must demonstrate a material change in circumstances, was a procedural due process violation under the Fifth Amendment, (Pet. ¶¶ 113–20).

On December 3, 2025, the Court granted the TRO Application, finding that his detention without a pre-deprivation hearing likely violated the Due Process Clause of the Fifth Amendment, and issued Respondents an Order to Show Cause why a preliminary injunction should not issue. (TRO Order at 14–15, 17–18). On December 11, 2025, pursuant to the Court's TRO Order, an IJ held a bond hearing for Petitioner. (Gonzalez Decl. ¶¶ 1, 2). The IJ determined that though denial of Petitioner's CAT application was a material change in circumstances since his September 23, 2025, release on bond, continued detention was not appropriate. (Custody Redetermination Bond Order). The IJ ordered Petitioner released on an increased bond amount, and upon payment of the bond, Petitioner was released on December 17, 2025. (*Id.*); (Gonzalez Decl. ¶¶ 1, 2). As a part of his release, Petitioner enrolled in ICE's Alternatives to Detention Program, through which he is required to wear a GPS ankle-bracelet tracking device, check in with ISAP every other week, and permit ISAP to conduct a home visit every thirty days. (Gonzalez Decl. ¶¶ 3, 4).

Petitioner filed this Motion on December 11, 2025, seeking to enjoin Respondents from re-detaining him without first affording him a hearing to determine whether his re-detention is lawful. (Mot.). Respondents filed the response on January 9, 2026. (ECF No. 23 ("Opp.")). Petitioner filed a Reply on January 16, 2025. (ECF No. 24 ("Reply")).

## II.   LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). The moving party must establish that: (1) he is likely

to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *id.* at 20). "The first *Winter* factor, likelihood of success on the merits, "is the most important factor." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021).

Alternatively, under the Ninth Circuit's "serious questions standard," also known as the "sliding scale variant" of the *Winter* standard, the moving party may obtain a preliminary injunction by showing there are "serious questions going to the merits," that "the balance of hardships [] tips sharply towards the plaintiff," "that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 635 (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011)). Under either standard, where the government is the party opposing the relief sought, the third and fourth *Winter* factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). If a movant makes a sufficient showing of the requisite factors, "a court must not shrink from its obligation to enforce his constitutional rights, regardless of the constitutional right at issue." *Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023) (internal quotation marks omitted and cleaned up); *Brown v. Plata*, 563 U.S. 493, 511 (2011).

## III.  DISCUSSION

As in the TRO Application, Petitioner argues that a preliminary injunction should issue because he is likely to succeed on the merits of his Petition because: (1) his detention violates 8 U.S.C. §§ 1231(a)(3) and 1231(a)(6); (2) his detention is arbitrary, unjustified, and punitive, such that it amounts to a due process violation; and (3) his re-detention without first being afforded a pre-deprivation hearing before a neutral arbiter where ICE bears the burden of proving a material change in circumstances violates the due process clause. (Mot. at 8).

In response, Respondents do not address any of the above standards for issuing a preliminary injunction. Instead, they argue that "[p]roviding the Petitioner with the bond hearing moots the requested preliminary injunction and [Petitioner's] habeas petition more

generally," citing to cases within this district that have found petitions moot after the petitioner received a requested bond hearing. (Opp. at 2). Respondents do not offer any other arguments why the Court should not issue a preliminary injunction. *See generally* (*id.*).[2]

### A. Mootness

Whether Petitioner's receipt of a bond hearing and subsequent release from custody causes his request for a preliminary injunction and Petition to be moot depends on whether the request and Petition continue to present a case or controversy under Article III, § 2 of the United States Constitution. "This case-or-controversy requirement subsists through all stages of federal judicial proceedings," *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). "To maintain an extant claim, a litigant must continue to have a personal stake in the outcome of the suit throughout all stages . . . ." *Abdala v. INS*, 488 F.3d 1061, 1064-65 (9th Cir. 2007) (internal quotation marks omitted). "[T]hroughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer*, 523 U.S. at 7 (internal quotation marks and citation omitted). When, however, a petitioner receives the relief requested in the habeas petition or a court is unable to provide the relief sought, the petitioner's case is moot. *Munoz v. Rowland*, 104 F.3d 1096, 1097–98 (9th Cir. 1997).

Here, the Court concludes that this case continues to present a live controversy because, under *Nielsen v. Preap*, 586 U.S. 392 (2019), the relief provided in the TRO Order is only temporary and, contrary to *Picrin-Peron v. Rison*, 930 F.2d 773 (9th Cir. 1991), Petitioner faces a real and immediate threat of unlawful re-detention absent further relief from this Court.

---

[2] Respondents have thus conceded that, if the Court finds the case is not moot, a preliminary injunction should issue based on the Court's previous analysis in the TRO, which remains the same, given that Respondents have not shown the factual circumstances—other than Petitioner's receipt of a bond hearing and subsequent release—have changed. The Court incorporates its reasoning for the TRO into this Order.

1    In *Nielsen v. Preap*, the Supreme Court found that a petitioner's release from immigration detention pursuant to preliminary injunctive relief did not moot a habeas petition. 586 U.S. at 403. In that case, the Court reviewed two actions in which immigrants detained under 8 U.S.C. § 1226(c)'s mandatory-detention requirement brought class action claims alleging that they were entitled to a bond hearing. *Id*. The government argued that the case was moot because, "by the time of class certification the named plaintiffs had obtained either cancellation of removal or bond hearings." *Id*. However, the Supreme Court held that "those developments did not make the cases moot because at least one named plaintiff in both cases had obtained release on bond" pursuant to the district court's issuance of a preliminary injunction and, "[u]nless that preliminary injunction was made permanent and was not disturbed on appeal, these individuals faced the threat of re-arrest and mandatory detention." *Id*.

By contrast, in *Picrin-Peron v. Rison*, the Ninth Circuit deemed moot the petition of an individual formerly detained in the custody of Immigration and Naturalization Service ("INS") based on the fact that INS had both voluntarily released the petitioner from custody in response to the petition and had submitted a sworn declaration from the Director of the INS, Los Angeles Field Office, attesting that the petitioner, absent certain changed circumstances, would remain on parole. 930 F.2d at 776. Subsequently, in *De Gomez v. Baker*, 606 F. App'x 409 (9th Cir. 2015), the Ninth Circuit held in an unpublished opinion that a noncitizen's release on bond, accompanied by the government's sworn assurances that re-detention would not occur without a bond hearing, mooted the petitioner's habeas petition. *De Gomez*, 606 F. App'x at 409–10.

Here, the Court finds this case continues to present a live controversy for several reasons. First, as part of his prayer for relief, the Petitioner requests several forms of relief, only some of which have been granted by the TRO Order. Specifically, the Petition requests immediate release or a bond hearing, as well as an injunction prohibiting Petitioner's re-detention without a pre-deprivation hearing. (Pet. at *Relief Requested*). The TRO Order only granted part of the relief Petitioner requested when it found that Petitioner

has satisfied the *Winter* factors for his procedural due process claim and ordered a bond hearing. The Court then declined to address Petitioner's remaining requests for prospective relief and did not address Petitioner's statutory or substantive due process claims. *See generally* (TRO Order). Thus, Petitioner's request for prospective, permanent relief in the form of an injunction remains. *See, e.g.*, *Esmail v. Noem*, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589, at *3 n.5 (C.D. Cal. Sept. 26, 2025) ("Given the TRO's expiration . . . the necessity of further injunctive relief maintaining the status quo during the pendency of litigation means the claim is necessarily *not* moot."); *Min v. Santacruz*, No. 2:25-cv-10971-MEMF-AS, 2025 WL 3764071, at *2 (C.D. Cal. Dec. 23, 2025) ("[T]he TRO, like the requested preliminary injunction, is inherently temporary; neither would outlive this case."); *Cruz v. Lyons*, No. 5:25-cv-02879-MCS-MBK, 2025 WL 3443146, at *2 (C.D. Cal. Dec. 1, 2025) ("A habeas petition is not moot where preliminary relief is not made permanent.") (citing *Nielsen*, 586 U.S. at 403).

Second, given Respondents' previous re-detention of Petitioner after releasing him on an OSUP, Respondents being required to hold a bond hearing for Petitioner in compliance with the TRO Order, and Respondents' current position that "[t]he government is allowed to revoke [an OSUP] for nearly any reason," (ECF No. 7 ("TRO Opp.") at 6), Petitioner faces the imminent threat of re-arrest and detention absent the issuance of a preliminary injunction. Unlike the respondents in *Picrin*, Respondents in this case have not provided a sworn declaration from an authorized official attesting that they will not re-detain Petitioner without an injunction preventing them from doing so. *Compare* (Opp.) *with Picrin-Peron*, 930 F.2d at 776. Thus, in the absence of any representation to the contrary, the Court does not find that the alleged wrong—Petitioner's re-detention without a pre-deprivation hearing—will not reoccur. *See Picrin-Peron*, 930 F.2d at 776. Respondents also have not "disavowed their practices, . . . adjusted their policies, [or] assured Petitioner that he is not subject to redetention." *Min*, 2025 WL 3764071, at *2; *see also* (Opp.). Moreover, Respondents' contention that Petitioner may seek relief from the

Court should he be re-detained by immigration officials further supports Petitioner's argument that the threat of re-detention is in fact real and immediate. *See* (Opp. at 3).

The Court also is not persuaded by Respondents' citation to cases in which some sister courts in the Central District have deemed moot requests for a preliminary injunction where petitioners received bond hearings pursuant to a temporary restraining order. (*Id.* at 2–3) (citing *Gonzalez v. Noem*, 5:25-cv-02054-ODW-BFM, dkt. no. 16 (C.D. Cal. Aug. 25, 2025); *Mosqueda v. Noem*, 5:25-cv-02304-CAS-BFM, dkt. no. 15 (C.D. Cal. Sept. 16, 2025); *Tut v. Noem*, 5:25-cv-02701-DOC-AGR, dkt. no. 13 (C.D. Cal. Oct. 30, 2025)). None of these cases discussed the temporary nature of the relief provided by the issued restraining order. Nor did the petitioners in those cases request prospective injunctive relief. To the contrary, in each of the cases, the petitioners requested immediate release or, in the alternative, a bond hearing pursuant to 8 U.S.C. § 1226(a). *See Gonzalez v. Noem*, 5:25-cv-02054-ODW-BFM, dkt. no. 1 (C.D. Cal. Aug. 7, 2025); *Mosqueda v. Noem*, 5:25-cv-02304-CAS-BFM, dkt. no. 1 (C.D. Cal. Sept. 3, 2025); *Tut v. Noem*, 5:25-cv-02701-DOC-AGR, dkt. no. 1 (C.D. Cal. Oct. 14, 2025); *compare id. with* (Pet. at *Relief Requested*).

Finally, the Court does not find the facts of *J.P. v. Santacruz*, cited by Respondents, to be analogous to the facts presented in this case. *See* (Opp. at 3) (citing No. 8:25-cv-01640-FWS, 2025 WL 2998305, at *1 (C.D. Cal. Oct. 24, 2025)). The petitioner in *J.P.*, fearing that he would be re-detained at an upcoming check-in with his immigration officer, sought injunctive relief preventing his detention without notice and a hearing before a neutral adjudicator. *J.P.*, 2025 WL 2998305, at *2. The court found that it lacked subject matter jurisdiction because the check-in, "the event giving rise to [p]etitioner's fears" had passed without the petitioner being re-detained or arrested, and the petitioner did not present sufficient allegations or evidence of a future threat of injury. *Id.* at *4.

By contrast, here, the Court finds Petitioner has presented sufficient facts to show the immediate threat of re-detention. Therefore, because the TRO Order only offers Petitioner temporary relief and Petitioner seeks an order to prospectively enjoin his re-

detention, this action presents a live controversy. Moreover, in the absence of any further argument regarding the sufficiency of Plaintiff's showing under *Winter*, the Court adopts the reasoning articulated in the TRO Order and concludes that a preliminary injunction should issue. Petitioner is likely to succeed on the merits of his procedural due process claim, he faces irreparable harm absent injunctive relief, and that the balance of the equities and the public interest favor an injunction. *See* (TRO Order).

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion for Preliminary Injunction. For the reasons stated above, the Court ORDERS as follows:

(1) Respondents and all of their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are ENJOINED from re-detaining Petitioner without first providing Petitioner with a pre-deprivation bond hearing before a neutral decisionmaker, at which the government must demonstrate that there has been a material change in circumstances since Petitioner was released on bond on December 17, 2025, that justifies detention;

(2) If Petitioner is re-detained, Respondents are ordered not to remove Petitioner from the country or transfer him from the Central District of California until this case is resolved; and

(3) The parties are directed to follow the orders of the Magistrate Judge regarding further proceedings.

**IT IS SO ORDERED.**

DATED: February 10, 2026

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE